UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL GONZALES,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE and DAVID LEZAMA,<br><br>    Defendants. | Case No. 19-cv-08195-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; GRANTING LEAVE TO AMEND**<br><br>Re: Dkt. No. 26 |

Before the Court is defendants the City of San Jose and San Jose Police Department Officer David Lezama's motion to dismiss plaintiff Gabriel Gonzales's first amended complaint. *See* Dkt. No. 26. This case arises out of SJPD's arrest of Gonzales when Gonzales was on his bicycle, where Officer Lezama struck Gonzales with his patrol vehicle as Gonzales biked on the sidewalk. *See* Dkt. No. 23.

The Court finds that the complaint fails to state sufficient facts to allege (1) that Officer Lezama used excessive force; (2) the City's *Monell* liability; (3) violation of the Bane Act; or (4) intentional infliction of emotional distress. Additionally, because Gonzales failed to comply with the Government Claims Act when he filed his original complaint, he is barred from adding state law causes of action in his later amended complaint.

Accordingly, the Court GRANTS the motion to dismiss and GRANTS Gonzales leave to amend the complaint to cure these deficiencies.

## I. Background

### A. Factual Allegations

Plaintiff Gabriel Gonzales alleges the following facts in the First Amended Complaint.[1] Dkt. No. 24, FAC. The Court assumes these factual allegations to be true for the purpose of deciding of the motion to dismiss. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

On December 9, 2019, Gonzales rode his bicycle to the gas station around 10:00 p.m. to pick up some Gatorade. FAC ¶ 16. He had an ear bud in his left ear to listen to music but did not use his right ear bud so that he could hear surrounding noises. FAC ¶ 20. The ear buds were not visible because he also wore a face shield for biking that covered them. FAC ¶ 21. While he rode in the designated bike lane, San Jose Police Department Officer David Lezama drove ahead of him on the road. FAC ¶ 24. Lezama slowed down, and Gonzales eventually passed Lezama's patrol vehicle. FAC ¶¶ 25–26. Lezama pulled up to Gonzales and started to yell at him, ordering him to pull over. FAC ¶¶ 27–29. Gonzales did not notice that Lezama was yelling until several seconds later because of his ear bud and face shield. FAC ¶¶ 26–27, 29. Gonzales was alarmed by Lezama's facial expression and body language, which conveyed a "significant level of anger and hostility." FAC ¶ 30. Noticing Lezama's anger and fearful for his safety, Gonzales responded by saying, "Why, I'm not doing anything?" FAC ¶¶ 34–35. Lezama then "screamed at the top of his lungs" at Gonzales, "Because I told you to!" FAC ¶ 36. Gonzales became afraid, and responded, "No." FAC ¶ 40. Gonzales then stopped, lifted

---

[1] The plaintiff alleged additional facts in his Opposition to the motion to dismiss: "[Gonzales] was knocked off and thrown from the bicycle; his entire torso is thrown on to the hood, his head banging off the hood." Dkt. No. 32, Opposition, at 6. Defendants also alleged in their Reply that "[Gonzales] lurch[ed] forward off the bicycle onto the car's hood, but he then calmly and without issue pushes off the hood and stands next to the patrol car." Dkt. No. 35, Reply, at 4 n.2. For the purpose of deciding this motion to dismiss, the Court declines to review these facts as they are not alleged in the FAC. The Court does not rely upon any materials outside of the FAC in this order. Because the Court is granting Gonzales leave to amend, Gonzales can include all relevant facts in the amended complaint. The defendants may present their evidence at summary judgment but may not allege facts or present evidence on their motion under Rule 12(b)(6).

1    his bicycle onto the sidewalk, and cycled in the opposite direction. FAC ¶¶ 40-41.

2        Lezama "punched the patrol vehicle accelerator and went up to the next light and

3    quickly took a U-turn." FAC ¶ 43. Lezama "came flying down" the road, shouting

4    through the patrol car speaker "words to the effect of 'pull over you son of a bitch,' or 'I'm

5    going to get you, you son of a bitch.'" FAC ¶ 44. He then flipped another U-turn, wheels

6    spinning and screeching as the patrol car fishtailed, and accelerated toward Gonzales.

7    FAC ¶ 47. Lezama drove onto the sidewalk and struck Gonzales. FAC ¶¶ 43–48. When

8    the car stopped, Gonzales was pinned in a still upright position against the metal fence of

9    the Oak Hill Memorial Cemetery. FAC ¶ 48.

10        To arrest Gonzales, Lezama threw Gonzales against the hood of the patrol vehicle

11    and placed him in handcuffs. FAC ¶¶ 51, 52. Moments after, Lezama threw Gonzales on

12    the ground and started yelling at him for his failure to pull over when ordered. FAC ¶¶

13    52–54. Gonzales was taken to Valley Medical Center in a neck brace. FAC ¶ 55. The

14    paramedics in the ambulance noted Gonzales's accelerated heart rate, a result of

15    tachycardia, and upgraded the urgency level of his care. FAC ¶¶ 57, 58. Gonzales

16    suffered severe pain and suffering and significant emotional distress, was diagnosed with a

17    concussion, and is being evaluated for a torn anterior cruciate ligament. FAC ¶ 66.

18    **B. Procedural History**

19        On December 17, 2019, Gonzales filed a complaint, alleging a Fourth Amendment

20    violation for the use of excessive force under 42 U.S.C. § 1983 against Officer Lezama and

21    the City of San Jose.[2] Dkt. No. 1. On March 17, 2020, Defendants filed an answer. Dkt.

22    No. 19. On April 17, 2020, Gonzales amended his complaint, adding three more claims in

23    addition to the § 1983 excessive force claim: (1) *Monell* liability against the City of San

24    Jose; (2) excessive force in violation of California's Bane Act against both defendants; and

---

[2] The original complaint is unclear as to whether Gonzales meant to bring claims against the City of San Jose. The City is listed in the caption and as a party, but not under any claims for relief. The Court finds that the City of San Jose should be considered a defendant in the original case based on the caption and the list of parties. *See* Dkt. No. 1 at 1, 3, 11.

(3) intentional infliction of emotional distress against both defendants. Dkt. No. 23. On April 24, 2020, Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). Dkt. No. 26. The Court held a hearing on the motion on June 10, 2020. Dkt. No. 39. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 9, 14.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Federal Rule of Civil Procedure 12(b)(6), a claim will not survive a motion to dismiss if it did not plead sufficient facts to "state a facially plausible claim to relief." Fed. R. Civ. P. 8(a), 12(b)(6). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Cahill*, 80 F.3d at 337–38. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re *Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

### A. Excessive Force Under 42 U.S.C § 1983

Plaintiff claims that Officer Lezama's excessive use of force violated his Fourth Amendment rights under 42 U.S.C § 1983.

To state a constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege

4

that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980).

Here, the conduct was committed by a police officer who was acting under color of state law. As to whether the officer's conduct violated a constitutional right, Gonzales argues that Lezama's use of force violated his Fourth Amendment right to be free from excessive force. FAC ¶ 70.

A claim that a law enforcement officer used excessive force is governed by the "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This analysis requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. This question is also analyzed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

There are several allegations that could be construed as uses of force in the complaint. The first use of force is when Lezama's patrol vehicle struck Gonzales as he tried to flee: "[Lezama took] the patrol vehicle up on to the sidewalk and striking [Gonzales] with such force as to cause the injuries noted below . . . . when Lezama's vehicle came to a stop, [Gonzales] was pinned in a still upright position against the metal fence of the Oak Hill Memorial Cemetery." FAC ¶¶ 48, 49. The second use of force occurred during the arrest, when Lezama "grabbed [Gonzales] and threw him up against the hood of the patrol vehicle . . . and placed him in handcuffs." FAC ¶ 51. The third use of force occurred after the arrest when Officer Lezama "threw [Gonzales] on the ground . . . and begin yelling at him, again on the topic of [Gonzales] failing to stop when [Lezama] told him to." FAC ¶ 54.

As to the first instance, defendants argue that Officer Lezama's use of force during the seizure was reasonable. Motion at 5. They point out that Officer Lezama asked Gonzales to stop but Gonzales rode away, ignoring Lezama's request, and that in order to

1    stop Gonzales, Lezama "use no more force than necessary" since Gonzales "did not even
2    fall." *Id.* at 6. Defendants allege that "[p]laintiff was not knocked or thrown form [sic] his
3    bicycle—indeed, Plaintiff did not even fall when Officer Lezama's patrol car made contact
4    with him—evinces the minor nature of Officer Lezama's maneuver." *Id.* The motion to
5    dismiss does not address whether the force used during or after the arrest was excessive.
6    *Id.*

Here, plaintiff has not alleged enough facts to plead that a constitutional violation occurred. The complaint is not clear enough about the force used by the patrol vehicle that stopped Gonzales. Was Gonzales still in an upright position after the car made contact because the force of that contact was so light, or because he was pinned to the fence and could not fall over? How did Gonzales go from that upright position to being taken to the hospital in a neck brace? If Lezama used the patrol vehicle as a barricade to stop Gonzales, the level of force might not be as great as if Lezama used the vehicle as an impact weapon to hit Gonzales head-on.

Moreover, the fact that Gonzales attempted to evade arrest cuts against a finding of excessive or unreasonable force. *See Graham*, 490 U.S. at 396. Gonzales expressly said "no" to Lezama's order and fled by biking in the opposite direction. FAC ¶¶ 40, 41. Under these circumstances, it might be reasonable for officers to use forceful conduct to arrest the plaintiff given his resisting arrest. *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1096–97 (9th Cir. 2006).

The Court FINDS that Gonzales's facts are insufficient to allege a violation of his constitutional rights. Gonzales may amend the complaint to allege additional facts in support of this claim.

### 1. Qualified Immunity

The "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

6

1  (1982)). The qualified immunity analysis is two-pronged, querying: (1) whether there was
2  a deprivation of a constitutional or statutory right, and (2) whether that constitutional or
3  statutory right was "clearly established" at the time of the incident. *See Pearson*, 555 U.S.
4  at 232. The Court may exercise its discretion in deciding which prong to address first in
5  light of the particular circumstances of each case. *See id.* at 236.

6  Above, the Court found that Gonzales has not alleged sufficient facts to plead a
7  violation of his constitutional rights. This conclusion holds as to the first prong of the
8  qualified immunity analysis. Because Gonzales has not alleged a constitutional
9  deprivation, the Court need not decide whether the right was clearly established.
10 Nonetheless, the Court discusses this prong of the qualified immunity analysis for the
11 purpose of aiding the parties in the next round of pleading.

12 A right is "clearly established" if a case can be identified "where an officer acting
13 under similar circumstances . . . was held to have violated" the Constitution. *White v.*
14 *Pauly*, 137 S. Ct. 548, 552 (2017). The case need not be "directly on point for a right to be
15 clearly established," but "existing precedent must have placed the statutory or
16 constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018);
17 *see Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (holding that a plaintiff
18 seeking to overcome qualified immunity must point to prior case law that articulates a
19 constitutional rule specific enough to alert these deputies in this case that their particular
20 conduct was unlawful). The Supreme Court has "repeatedly told courts —and the Ninth
21 Circuit in particular—not to define clearly established law at a high level of generality."
22 *Id.* Moreover, the plaintiff bears the burden of proof that the right allegedly violated was
23 clearly established. *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014).

24 Here, Gonzales has not met his burden of showing that the right implicated was
25 clearly established at the time of the incident. The most glaring issue is that the plaintiff
26 cites no case with comparable facts—where an officer used a patrol vehicle to strike a
27 fleeing cyclist—where the officer was held to have violated the Constitution. FAC ¶¶ 69–
28 71. That said, the Court points out that the cases cited by defendants in their motion are

7

1   equally lacking. Defendants did not cite controlling case law, but pointed to one Eleventh
2   Circuit case and another California District Court case to argue that a police officer may
3   use significant force to stop a person fleeing on a bicycle without violating the Fourth
4   Amendment. Motion at 6–7; *see Montanez v. City of Orlando*, 678 F. App'x 905, 906
5   (11th Cir. 2017); *Dulaney v. Dyer*, No. 1:14-CV-1051-LJO-BAM, 2015 WL 6081842, at
6   *1 (E.D. Cal. Oct. 13, 2015). Importantly, neither case defendants cite involves patrol
7   vehicles; in fact, both involve officers using significant bodily force to tackle or take down
8   fleeing cyclists. *See id.* It seems to the Court that the amount of force from vehicular
9   impact could be significantly greater than mere bodily impact. *See generally, Saetrum v.*
10  *Vogt*, 673 F. App'x 688, 690 (9th Cir. 2016) (holding that using a patrol car as an impact
11  weapon to drive into a pedestrian plaintiff and knocking him to the ground violated clearly
12  established law); *Woodward v. D'Onofrio*, No. 14-12347, 2015 WL 6507395, at *3 (E.D.
13  Mich. Oct. 28, 2015) (holding that striking a bicycle with a patrol car in order to stop or
14  seize a person is a violation of a clearly established right to be free from excessive force).
15      Plaintiff argues that this is one of the exceptions where the alleged violation was so
16  obvious that the "standard of 'common sense' can meet the clearly established threshold"
17  and that "[precedent] directly on point is not necessary." Opp. at 5. The Court disagrees.
18  While it is "common sense" that a patrol vehicle is capable of producing excessive force
19  and inflicting injuries to a bicyclist, it is unclear to the Court whether that happened in this
20  case. *See Paige v. City of New Brunswick*, 680 F. App'x 107, 112 (3d Cir. 2017)
21  (reasoning that facts are essential to determine the reasonableness of the police action)
22  ("For example, whether they deliberately rammed the bicycle with their cruiser, or simply
23  attempted to block [plaintiff's] flight, is a hotly contested matter.").
24      The Court is not persuaded that either party's cases show whether the right was
25  clearly established. Because it is plaintiff's burden to make this showing, the Court finds
26  that the burden was not met at this stage of the case. Additionally, if Gonzales pleads
27  more facts in the amended complaint, the Court will consider those new facts in
28  determining whether a clearly established right was violated.

8

1    Accordingly, the Court GRANTS Defendants' motion to dismiss Gonzales's first
2    claim with LEAVE TO AMEND.

### B. *Monell* Liability

In a § 1983 action, a municipality is liable when the alleged actions implement a municipal policy or custom in violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978). Under the *Monell* doctrine, Gonzales must show that he was injured under an expressly adopted official policy, a long-standing practice or custom, or the decision of a final policy maker. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013). Generally, a municipality cannot be held liable under § 1983 "solely because it employs a tortfeasor." *Monell*, 426 U.S. at 691. Rather, § 1983 liability may be imposed only when a municipal "policy" or "custom" is the "moving force" behind a violation of federally protected rights. *Id.* at 694.

Here, Gonzales does not allege sufficient facts to support his claim that his injury resulted from an official policy, a long-standing practice or custom, or the decision of a final policy maker. In the FAC, Gonzales describes the city's official policies as "unconstitutional" without citing any policy statement, ordinance, regulation, or decision officially adopted or promulgated by the City of San Jose. FAC ¶ 63. Absent a formal policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Gonzales's vague allegations also fail here. Gonzales contends that "[the city] has had *prior incidents* of the use of a patrol vehicle to ram or strike a fleeing suspect . . . ." FAC ¶¶ 62–63 (emphasis added). However, the description of "prior incidents" is too vague to amount to a long-standing practice or custom. *See Clemmons v. City of Long Beach*, 379 F. App'x 639, 641 (9th Cir. 2010) (holding that improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy). Gonzales mentioned two prior incidents, in which "Mr. Dameon Wright . . . was struck twice by SJP officer's vehicles

nearly ten years apart . . . ." FAC ¶ 4. However, two incidents are not sufficient to establish a custom. *Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir.1988).

Inadequacy of training may also "serve as the basis for § 1983 liability," but only when a plaintiff can prove "deliberate indifference"—a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997) (requiting a pattern of similar constitutional violations under a failure-to-train theory). Under this theory, Gonzales alleges that "[the city] failed to adequately supervise and train [d]efendants to refrain from striking a fleeing suspect . . . with a police patrol vehicle" and "[defendant city] has demonstrated deliberate indifference to this patten and practice of Constitutional violations by its employees by failing to take necessary . . . measures . . . ." FAC ¶¶ 76–77. Similarly here, Gonzales has not alleged enough facts to show that the city acted with deliberate indifference as to its officers striking fleeing suspects because these are mere conclusory statements.

Because Gonzales's *Monell* claim contains conclusory legal statements rather than specific facts, the Court finds that the *Monell* claim is insufficiently pleaded, and GRANTS the motion to dismiss the § 1983 claim against San Jose with LEAVE TO AMEND.

**C. The Bane Act (California Civil Code § 52.1)**

To bring a claim under California's Bane Act, the plaintiff must satisfy two distinct elements: (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) that the interference or attempted interference was by threats, intimidation, or coercion. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015); see also Cal Civ. Code § 52.1. Qualified immunity does not apply to claims under the Bane Act, because qualified immunity is a federal doctrine that does not extend to state tort claims against government employees. *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1244–46 (2007). "[T]he elements of [an] excessive force claim under Civil Code § 52.1 are the same as under § 1983." *Chaudry v. City of Los Angeles*, 751 F.3d

10

1096, 1105 (9th Cir. 2014). Thus, if a plaintiff cannot prove a constitutional violation under § 1983, he cannot bring a cause of action under a Bane Act violation either. *Pryor v. City and Cty. of San Francisco*, 671 F. App'x 751, 752 (9th Cir. 2017).

In their motion to dismiss, defendants argue that a Bane Act claim requires a showing of threats, intimidation or coercion in addition to an underlying constitutional violation. Motion at 15. Defendants cite *Shoyoye v. Cty. of Los Angeles*, in which the court ruled that the Bane Act requires showing that the defendant used coercion or violence to interfere with a constitutional right in addition to the coercion inherent in the detention itself. 203 Cal. App. 4th 947, 958 (Cal. Ct. App. 2012) (citations omitted); Motion at 21. Plaintiff counters with *Reese v. County of Sacramento*, 888 F. 3d 1030 (9th Cir. 2018), in which the court ruled that the use of excessive force can be enough to satisfy the "coercion" element of § 52.1. Opp. at 19. Here, *Reese* is the controlling case as the Ninth Circuit has reasoned that "reliance on *Shoyoye* is misplaced" when the claim is about excessive force. *Reese* 888 F. 3d at 1042. In *Reese*, the Ninth Circuit held that "[n]othing in the test of [§ 52.1] requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 801 (Cal. App. 2017)).

Additionally, the Bane Act requires "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* In other words, it must be that the officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Id.* at 1045 (internal quotation omitted) (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Here, Gonzales's complaint falls short of alleging a Bane Act violation because Gonzales does not allege enough facts to show Lezama intended not only the force, but also its unreasonableness when he struck Gonzales. Gonzales only alleges that "Lezama sped up coming out of the U-turn and accelerated towards the oncoming [Gonzales]," which at most shows Lezama intended the contact. Moreover, because Gonzales did not

11

allege enough facts for a constitutional violation under § 1983, he has not pled a cause of action for a constitutional violation under the Bane Act either. *Pryor*, 671 F. App'x 752.

Accordingly, the Court GRANTS Defendants' motion to dismiss Gonzales's Bane Act violation claim with LEAVE TO AMEND.

### D. Intentional Infliction of Emotional Distress (IIED)

Plaintiff brings claims for intentional infliction of emotional distress against both officer Lezama and against the City of San Jose under a theory of respondeat superior. FAC ¶¶ 90–91.

A claim for intentional infliction of emotional distress requires a plaintiff to show: (1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff actually suffering severe or extreme emotional distress; and (3) actual or proximate causation. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993). Severe or extreme emotional distress "may consist of any highly unpleasant mental reaction such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 396 (1970).

Here, Gonzales's claim for IIED is insufficiently pleaded. First, Gonzales's allegation "Lezama [had] the specific intent to inflict severe mental and emotional distress upon the Plaintiff, to wit, the anticipation of being struck by a moving vehicle" amounts to a legal conclusion. FAC ¶ 89. Second, because the IIED claim alleges the same facts as an excessive force claim, the Court will defer the IIED claim to the determination of the excessive force claim. *See, e.g. Dillman v. Tuolumne Cnty.*, 1:13–CV–00404 LJO, 2013 WL 1907379 (E.D. Cal. May 7, 2013); *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1186 (E.D. Cal. 2010) (illustrating that courts have deferred dismissal of the IIED claim when the excessive force claim has yet to be decided). Because there are not enough facts alleged as to the constitutional violation, the Court is not convinced that Lezama engaged in "extreme and outrageous conduct" with an "intent of causing, or reckless disregard of the probability of causing emotional distress." *Potter*, 6 Cal. 4th at 1001.

Accordingly, the Court GRANTS the motion to dismiss the IIED claim with LEAVE TO AMEND.

### E. The Government Claims Act

For claims brought under state (rather than federal) law, California's Government Claims Act requires a plaintiff to exhaust administrative remedies with a public entity before filing a lawsuit against that entity for damages based on the same claim. *State of California v. Superior Court*, 32 Cal. 4th 1234, 1237 (2004). In his complaint, a plaintiff must allege compliance with the GCA to sufficiently plead his claim. *Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). To exhaust administrative remedies under the GCA, the plaintiff must both file an administrative claim and the claim must have been rejected by the public entity. Cal. Gov. Code § 945.4 (2014); Cal. Gov. Code § 912.4 (2002). Rejection can come in the form of notice from the entity or from 45 days with no response. *Id*. The California Supreme Court has held that the exhaustion requirement is not merely a procedural requirement; rather, exhaustion constitutes an element of every state law cause of action against a public entity. *State of California*, 32 Cal. 4th at 1244 (rejecting the holding of *Cory v. City of Huntington Beach*, 43 Cal. App. 3d 131 (1974) that compliance with the GCA is a procedural requirement rather than an element of any state law claim). This means that until a plaintiff's government claim has been rejected, his state law causes of action have not arisen because one element does not exist. A cause of action must arise before a case is filed—a plaintiff may not amend a complaint to add causes of action that arise later. *Walton v. Kern Cty.*, 39 Cal. App. 2d 32, 34 (1940). So, if plaintiff has not exhausted administrative remedies under the GCA when he files a complaint, his state law causes of action cannot later be added to an amended complaint.

Such is the case here. The incident with Officer Lezama occurred on December 9, 2019. FAC ¶ 1. Plaintiff filed his government claim with the City of San Jose on December 16, 2019. FAC ¶ 10. Plaintiff filed this case on December 17, 2019. Dkt. No. 1. His original complaint brought only one federal claim under § 1983. *Id*. His amended

13

complaint, which he filed on April 17, 2020, included state law claims for violation of the Bane Act and for intentional infliction of emotional distress. Dkt. No. 24. In the opposition to the motion to dismiss, Plaintiff acknowledges that his state law causes of action had only accrued under the GCA when his claim with the City of San Jose had been rejected—that is, after he filed the original complaint. Opp. at 15.

At the hearing on this motion, Plaintiff argued that the requirements of the GCA have now technically been met and that the state law claims should thus proceed. Dkt. No. 39. But compliance with the GCA is more than a mere technicality. The purpose behind the statute is to encourage would-be litigants to settle their cases with public entities before the government has incurred the costs of defending a lawsuit. *Le Mere v. Los Angeles Unified Sch. Dist.*, 35 Cal. App. 5th 237, 247 (2019). The public entity is not afforded time to investigate and resolve a claim that is filed the day before a lawsuit is filed. Allowing the plaintiff to do so would be clearly out of step with the legislature's intent in enacting the GCA.

The motion to dismiss the state law claims for failure to comply with the Government Claims Act is therefore GRANTED. The Court suspects that amendment to cure this deficiency is futile. However, given Plaintiff's leave to amend the rest of the complaint, the Court grants LEAVE TO AMEND as to the GCA compliance to give the plaintiff opportunity to allege further facts to show that his state law claims should not be dismissed.

**IV. Conclusion**

The Court GRANTS Defendants' motion to dismiss and GRANTS the plaintiff LEAVE TO AMEND. If Gonzales chooses to amend, he must file his amended complaint by July 10, 2020. If Gonzales does not file a timely amended complaint the Court will enter judgment for defendants. The amended complaint may not add additional claims or defendants without leave of Court.

**IT IS SO ORDERED.**

Dated: June 15, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge