UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL GONZALES,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE and DAVID LEZAMA,<br><br>    Defendants. | Case No. 19-cv-08195-NC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO RETAIN CONFIDENTIALITY**<br><br>Re: Dkt. No. 42 |

Before the Court is Defendants the City of San Jose's and San Jose Police Department Officer David Lezama's motion to maintain confidentiality over body-worn camera footage pursuant to this case's stipulated protective under Civil Local Rule 7-11. Plaintiff argues that Defendants waived the confidentiality designation over the footage by failing to meet the deadlines set by the protective order, and also argues that the designation is inappropriate under Federal Rule of Civil Procedure 26(c). The Court finds that no waiver occurred, but that Defendants have failed to show good cause for the confidentiality designation. Therefore, the motion to retain confidentiality over the footage is hereby DENIED.

**I.    Background**

Plaintiff Gabriel Gonzales brought this case for violation of his civil rights under 42 U.S.C. § 1983 based on SJPD Officer David Lezama's alleged use of excessive force against him. Dkt. No. 41 (Amended Complaint). Gonzales alleges that while he was

1    riding his bicycle along a sidewalk in San Jose, Officer Lezama U-turned his patrol vehicle
2    and accelerated over the curb and onto the sidewalk, striking Gonzales head-on.  *Id.* at ¶¶
3    24–51.  The Court granted the defendants' motion to dismiss Gonzales's original
4    complaint on June 15, 2020, granting leave to amend, and Gonzales filed an amended
5    complaint on July 22, 2020.  Dkt. Nos. 40 and 41.  Defendants have filed a motion to
6    dismiss the amended complaint that is not yet fully briefed.  Dkt. No. 43.

The instant motion concerns the defendants' confidentiality designation over body-worn camera ("BWC") footage depicting the events alleged in the complaint.  Dkt. No. 42.  Defendants designated the BWC footage as confidential under the parties' stipulated protective order.  Plaintiff's counsel challenged that designation.  *See* Dkt. No. 44-1, Ex. A; *see also* Dkt. No. 45-1, Ex. A.  The parties met and conferred but did not resolve their dispute.  *Id*.  Defendants brought a motion to retain confidentiality over the BWC footage under Civil Local Rule 7, pursuant to the provisions of the protective order.  *See* Dkt. No. 24 at ¶ 6.3.  Plaintiff opposed the motion and Defendants replied.  Dkt. Nos. 44, 45.

## II.    Legal Standard

The parties in this case entered into a stipulated protective order at Dkt. No. 24.  This order applies to material produced in discovery designated by either party as "confidential."  Protective Order ¶ 2.13.  To be designated as "confidential," materials must qualify for protection under Federal Rule of Civil Procedure 26(c).  *Id.* ¶ 2.2.  The process for designation starts with a party marking material as "confidential" before disclosure.  *Id.* ¶ 5.2.  If another party wishes to challenge that designation, they must do so in writing with a description of the basis for their challenge.  *Id*. ¶¶ 6.1–6.2.  Then, the parties must meet and confer over the challenge.  *Id*.  If the parties' meet and confer is not successful, they may bring a motion to the court under Civil Local Rule 7 to resolve the issue.  *Id*. ¶ 6.3.  The party seeking the confidentiality designation must file their motion with the court within 21 days of the initial notice of the challenge, or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.  *Id*.  Failure to file the motion on time constitutes waiver of the confidentiality

designation. *Id.*

The confidentiality of materials covered by protective orders is governed by Federal Rule of Civil Procedure 26(c). That rule requires that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The party seeking a confidentiality designation over materials under a protective order bears the burden of showing good cause for confidentiality; that burden remains when the confidentiality designation is challenged by another party. *In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

The court's analysis in deciding whether a party has shown good cause for a confidentiality designation begins with asking whether disclosure of the material will cause a "particularized harm." *Id.* (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). The party seeking confidentiality must "allege specific prejudice or harm" that will result from disclosure. *Id.* (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.3d 470, 476 (9th Cir. 1992). Broad allegations without specific examples do not sufficiently constitute a showing of particularized harm. *Id.*

If the court determines that disclosure of the material will cause particularized harm, it next proceeds to balance the public and private interests in confidentiality versus disclosure. *Id.* Seven factors guide this balancing test:

> (1) whether disclosure will violate any privacy interests;
>
> (2) whether the information is being sought for a legitimate purpose or for an improper purpose;
>
> (3) whether disclosure of the information will cause a party embarrassment;
>
> (4) whether confidentiality is being sought over information important to public health and safety;
>
> (5) whether the sharing of information among litigants will promote fairness and efficiency;
>
> (6) whether a party benefitting from the order of confidentiality is a public entity or official; and
>
> (7) whether the case involves issues important to the public.

3

*Glendale Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995); *In re Roman Catholic Archbishop of Portland*, 661 F.3d at 424.

### III. Discussion

#### A. Burden

As an initial matter, the Court is concerned that Defendants seem to misunderstand where the burden lies here. They repeatedly criticize the plaintiff's "only reason" "to remove the confidentiality designation," as if the plaintiff bears the burden of showing that the designation should *not* apply. Dkt. No. 42 at 2; *see also* Dkt. No. 42 at 4 ("Plaintiff's general assertions about First Amendment interest and the public 'right to know' are unavailing."). Defendants even frame their motion by stating at the outset that "Plaintiff here seeks to remove the confidentiality designation as to" the BWC footage. But the burden here is on Defendants, who filed a motion to *retain* the confidentiality designation. The plaintiff need not prove that the designation is inappropriate. Rather, the defendants must show good cause for it to remain. They have not.

#### B. Waiver

Plaintiff argues that the defendants waived their confidentiality designation over the BWC footage by failing to bring a motion before the Court within 21 days of their initial challenge as required under the protective order. Protective Order at ¶ 6.3. To illustrate the timeline of the plaintiff's initial challenge and the parties' proceeding meet and confer process, the parties attached to their briefing on this motion various letters and emails between counsel regarding the confidentiality designation. *See* Dkt. No. 44-1, Ex. A; *see also* Dkt. No. 45-1, Ex. A. The Court has reviewed this correspondence and finds that no waiver occurred.

Though Plaintiff's counsel argues that he brought his challenge to the confidentiality designation on June 8, 2020, and Defendants filed their motion on July 22, 2020—more than 21 days later—the Court finds that the 21-day deadline did not apply in this situation for three reasons. First, Plaintiff's original challenge to the confidentiality designation may not have met the requirements of the protective order in the first place

4

because it did not clearly describe the basis for the challenge. Protective Order ¶ 6.2. Second, the parties seem to have simply miscommunicated on multiple occasions regarding scheduling phone calls with each other. Finally, the Court granted the defendants' motion to dismiss as to all claims in the original complaint on June 15, 2020, which may have led the defendants to reasonably believe that the 21-day clock had tolled, at least until Plaintiff filed an amended complaint. The Court therefore finds that defendants did not waive their confidentiality designation under the protective order.

### C. Good Cause

#### 1. Particularized Harm

Next, the Court turns to the question of whether the defendants have shown good cause that the BWC footage should be confidential under Federal Rule of Civil Procedure 26 and, by extension, under the protective order in this case. To make this showing, the defendants must first allege a particularized harm that would result from disclosure of the material.

Defendants' motion to retain confidentiality over the BWC footage only describes one harm that might result from public disclosure of the footage: biasing a future jury. *See* Dkt. No. 42. Defendants describe this harm somewhat obtusely, arguing that "public release of video footage also places it beyond the Court's control and in the hands of numerous third parties who may edit and use it for purposes that may not be consistent with fairness." *Id*. at 3. They also express worry that the video might be "edit[ed] and manipulate[ed] by the media and others," and that viewing a video that is "incomplete, obstructed, missing context" would "present an inaccurate account of the case and bias potential jurors." *Id*. Defendants argue that disclosure of the video could result in "the evils of prejudice and juror tainting." *Id*. at 5.

Though they do not explicitly paint this picture, it seems that Defendants' concern (as described by the Plaintiff in his opposition brief) boils down to the "possibility that some of the Body Worn Camera Footage will be released to the press, and that the press will then in-turn manipulate or alter the video footage in some way—and then that altered

5

video footage might then be released to the public to such an extent that it might prejudice a jury in a potential trial in this matter." Dkt. No. 44 at 5. But Defendants allege no specific facts to suggest that any of those things will occur.

At the same time, Defendants undercut their own position by also arguing that the public is not particularly interested in this case. They call this "not a high-profile matter but rather a run-of-the-mill excessive force case," and point out that there has been "perhaps a single news story" about it while "[n]either the police chief nor any other City of San Jose official has commented on the BWC footage at issue, and the case has not been subject of any public city council meeting." *Id*. at 4. So, Defendants vaguely allude to the possibility that "the media and others" might edit the video, distribute it publicly, and taint the potential jury pool thereby depriving them of a fair trial. But they also argue that the media and the public are not concerned about this matter at all.

Defendants' broad conjecture about what might happen if the BWC footage is publicly disclosed does not constitute plausible allegation of "particularized harm." *See In re Roman Catholic Archbishop of Portland Oregon*, 661 F.3d at 424. Instead, their motion is made up of vague allegations, with no specific examples, that fail to show good cause. *Id*. The Court therefore FINDS that the defendants have not alleged any plausible particularized harm that would result from the public disclosure of the BWC footage.

### 2. Balancing Test

Nonetheless, the Court discusses the balance of public and private interests at stake here. The Court addresses the *Glendale Trust Co.* factors in its consideration. 56 F.3d at 483.

First, Defendants have not articulated privacy interests that will be violated by disclosure of the BWC footage. Indeed, the events took place in public, are described as allegations in the public complaint, and Officer Lezama's job as a police officer means that he is in the public eye every day. Second, the Court sees no evidence of impropriety in Plaintiff's request. Third, if the events alleged in the complaint took place as Plaintiff describes, then disclosure might cause embarrassment to the San Jose Police Department

or to Officer Lezama. If they did not, as Defendants argue, their embarrassment should be minimal or nonexistent. Fourth, the Court finds that the information in the BWC footage is important to the public's health and safety. The public has a strong interest in knowing whether members of their tax-funded police department who swear to protect and serve them are using excessive force in violation of the United States Constitution, thereby endangering the health and safety of the community. Fifth, the Court finds that the fairness and efficiency between the parties is not primarily at issue here. Sixth, the Court acknowledges that the parties benefitting from confidentiality are Officer Lezama and the City of San Jose. As a municipality and a public employee, these defendants have a high degree of responsibility to the public. And finally, as briefly discussed as to factor four, the Court finds that the BWC footage could depict issues that are important to the public. The Court finds that this factor is especially relevant to this dispute.

The parties analogize this case to the facts of *Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018).[1] There, this Court held that the BWC footage at issue should not remain confidential. As distinct from this case, in *Harmon* the Court's order followed disclosure of the video in violation of the protective order after a publicly-approved settlement concluding a highly publicized case. *Id*. at 623–25. Defendants argue that those facts, in contrast to this case which is still in active litigation and which has received minimal public attention, suggest that the Court should come to a different conclusion here. However, the Court's findings in *Harmon* about the public's interest in BWC footage hold just as true in this case. In *Harmon*, this Court stated that the public "unquestionably holds a hefty interest in police force transparency, and especially so when fundamental rights are at stake." *Id*. at 624. Indeed, for this reason, cases involving claims of civil rights violations against police departments "should be moderately pre-weighted in

---

[1] In an email included as an attachment to Plaintiff's opposition to the motion, counsel for the City of San Jose states that "[i]t's our office's current policy to designate all bodyworn camera footage confidential during the pendency of active litigation. I take the point that our policy is in some tension with the *Harmon* case, but there are bases for distinguishing the case under the circumstances of this case." The Court agrees that this policy is in tension with its holding in *Harmon*.

7

favor of disclosure from the outset." *Id.* at 625 (citing *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995)).

The public's interest in alleged civil rights violations of its police department is, if anything, even stronger today. The Minneapolis Police Department's killing of George Floyd on May 25 of this year catalyzed protests throughout the nation against police use of excessive force that continue today. *See* "A Timeline of the George Floyd Protests," The New York Times, July 10, 2020 (available at https://www.nytimes.com/article/george-floyd-protests-timeline.html) (last accessed July 29, 2020). At one such protest, San Jose's police department is alleged to have gravely injured a local community organizer who, ironically, volunteered to train the department on bias. *See* "Community Organizer Who Trains Police on Bias Injured by Rubber Bullet During Protest," The Los Angeles Times, June 6, 2020 (available at https://www.latimes.com/california/story/2020-06-06/community-organizer-shot-by-rubber-bullet-during-protest) (last accessed July 29, 2020). Just yesterday, the San Jose Police Department made the local news for a video of one of its officers kicking and dragging a woman in a parking lot. *See* "San Jose: Video of Cop Kicking and Dragging Woman Prompts Fresh Calls for Police Reforms. But Some Worry It Won't Be Enough," The Mercury News, July 28, 2020 (available at https://www.mercurynews.com/2020/07/28/san-jose-video-of-cop-kicking-and-dragging-woman-prompts-fresh-calls-for-police-reforms-but-some-worry-it-wont-be-enough/) (last accessed July 29, 2020). These incidents—which represent only a small fraction of complaints of excessive force against SJPD—and the community's concern about them illustrate the ever-increasing public interest in the constitutionality, or lack thereof, of the Department's behavior.

Accordingly, the Court FINDS that the balance of private and public interest tips in favor of disclosure of the BWC footage.

**IV.   Conclusion**

The Court FINDS that Defendants did not waive their confidentiality designation over the BWC footage. The Court also FINDS that Defendants failed to show a

8

particularized harm that would occur if the designation was removed. Even if Defendants had alleged plausible particularized harm, the Court also FINDS that the public interest in disclosure of the video sharply outweighs SJPD's and Officer Lezama's private interest in keeping the footage confidential. As such, the motion to retain confidentiality over the BWC footage is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 31, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge