UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL GONZALES,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE and DAVID LEZAMA,<br><br>    Defendants. | Case No. 19-cv-08195-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; DISMISSING THE CITY OF SAN JOSE FROM THE CASE**<br><br>Re: Dkt. No. 43 |

This case arises out of the San Jose Police Department's arrest of Gabriel Gonzales when Gonzales was on his bicycle, where Officer David Lezama allegedly struck Gonzales with his patrol vehicle head-on as Gonzales biked on the sidewalk. Defendants the City of San Jose and San Jose Police Department Officer David Lezama move to dismiss both claims in plaintiff Gabriel Gonzales's second amended complaint. Dkt. No. 43. The Court previously granted the defendants' motion to dismiss the first amended complaint, granting Gonzales leave to amend. Dkt. No. 40. The Court finds that Gonzales sufficiently amended his claim for excessive force but failed to cure the deficiencies identified with his claim for *Monell* liability against the City. Additionally, the Court finds that Officer Lezama is not entitled to qualified immunity at this stage of the case because Gonzales alleges that Lezama used deadly force despite having virtually no justification for doing so. As such, the motion to dismiss is GRANTED IN PART and DENIED IN PART. The City of San Jose is dismissed from the case.

## I. Background

### A. Procedural History

Gonzales filed a complaint alleging a Fourth Amendment violation for the use of excessive force under 42 U.S.C. § 1983 against Officer Lezama and the City of San Jose. Dkt. No. 1. Defendants filed an answer. Dkt. No. 19. Gonzales later amended his complaint, adding three more claims in addition to the § 1983 excessive force claim. Dkt. No. 23. Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). Dkt. No. 26. The Court held a hearing on the motion and granted the motion to dismiss in full, granting Gonzales leave to amend. Dkt. Nos. 39, 40.

Gonzales filed his second amended complaint. Dkt. No. 43. The SAC includes two claims for (1) excessive force under 42 U.S.C. § 1983 against Officer Lezama, and (2) *Monell* liability for excessive force under 42 U.S.C. § 1983 against the City of San Jose. Defendants moved to dismiss. Dkt. No. 43.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 9, 14.

### B. Facts Alleged in the Second Amended Complaint

Plaintiff Gabriel Gonzales alleges the following facts in the Second Amended Complaint. Dkt. No. 41. The Court assumes these allegations to be true for the purpose of deciding the motion to dismiss. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

On December 9, 2019, Gonzales rode his bicycle to the gas station around 10:00 p.m. to pick up some Gatorade. SAC ¶ 16. He had an ear bud in his left ear to listen to music but did not use his right ear bud so that he could hear surrounding noises. SAC ¶ 20. The ear buds were not visible because he also wore a face shield for biking that covered them. SAC ¶ 21. While he rode in the designated bike lane, San Jose Police Department Officer David Lezama drove ahead of him on the road. SAC ¶ 24. Lezama slowed down, and Gonzales eventually passed Lezama's patrol vehicle, which was an SUV. SAC ¶¶ 26, 50. Lezama pulled up to Gonzales and started to yell at him, ordering

him to pull over. SAC ¶¶ 26–28. Gonzales did not notice that Lezama was yelling until several seconds later because of his ear bud and face shield. SAC ¶¶ 26–29. Gonzales was alarmed by Lezama's facial expression and body language, which conveyed a "significant level of anger and hostility." SAC ¶ 30. Noticing Lezama's anger and fearful for his safety, Gonzales responded by saying, "Why, I'm not doing anything?" SAC ¶¶ 34–35. Lezama then "screamed at the top of his lungs" at Gonzales, "Because I told you to!" SAC ¶ 36. Gonzales became afraid, and responded, "No." SAC ¶ 40. Gonzales then stopped, lifted his bicycle onto the sidewalk, and cycled in the opposite direction. SAC ¶¶ 40–41.

Lezama "punched the patrol vehicle accelerator and went up to the next light and quickly took a U-turn." SAC ¶ 43. Lezama "came flying down" the road, shouting through the patrol car speaker "words to the effect of 'pull over you son of a bitch,' or 'I'm going to get you, you son of a bitch.'" SAC ¶ 44. He then flipped another U-turn, wheels spinning and screeching as the patrol car fishtailed, and accelerated toward Gonzales who was still on the sidewalk riding his bicycle. SAC ¶¶ 45–46. Lezama "suddenly yanked the patrol vehicle steering wheel," steering the SUV over the curb and up onto the sidewalk. SAC ¶¶ 43–48. The patrol vehicle struck Gonzales. SAC ¶ 48.

Lezama struck Gonzales with the SUV head-on, slamming the grill and/or pushbar of the vehicle into Gonzales's bicycle and legs, pitching Gonzales upward and over the bicycle and onto the hood of the vehicle. SAC ¶ 49. Gonzales was thrown completely off his bicycle. SAC ¶ 50. The impact caused Gonzales's feet to come clear up over his head while his head and torso slammed onto the hood of the SUV. *Id*. His head bounced off the hood. *Id*. His hips rose up and over the edge of the SUV. *Id*.

After the impact, Gonzales was injured and leaning in a lop-sided fashion against the front of the patrol car after having slid down off of its hood. SAC ¶ 52. To arrest Gonzales, Lezama threw Gonzales against the hood of the patrol vehicle and placed him in handcuffs. SAC ¶ 54. Moments after, Lezama grabbed the lapels of Gonzales's jacket and shoved Gonzales onto the ground. SAC ¶ 56. Lezama yelled at Gonzales for failing to stop when Lezama told him to. SAC ¶ 58.

3

1  Gonzales was arrested and taken to Valley Medical Center in a neck brace. SAC ¶ 59. The paramedics in the ambulance noted Gonzales's accelerated heart rate, a result of his tachycardia, and therefore upgraded the urgency level of his care. SAC ¶¶ 60–62. Gonzales suffered severe pain, was diagnosed with whiplash and a concussion, and is being evaluated for a torn anterior cruciate ligament. SAC ¶ 71. He was prescribed crutches and a muscle relaxant narcotic. *Id*. His knee injury will likely interfere with his love of bicycling and may cause Gonzales to continue to accrue more medical expenses. SAC ¶ 72.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Federal Rule of Civil Procedure 12(b)(6), a claim will not survive a motion to dismiss if it does not plead sufficient facts to "state a facially plausible claim to relief." Fed. R. Civ. P. 8(a), 12(b)(6). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Cahill*, 80 F.3d at 337–38. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re *Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

### A. Excessive Force against Officer Lezama

Plaintiff claims that Officer Lezama's excessive use of force violated his Fourth

4

Amendment rights under 42 U.S.C § 1983. To state a constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980).

A claim that a law enforcement officer used excessive force is governed by the "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This analysis requires "careful attention to the facts and circumstances in each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. This question is analyzed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The most important factor is the suspect's immediate threat to the safety of the officer or others. *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2009). Deadly force is only reasonable when an officer has probable cause to believe that a suspect poses a significant threat of death or serious physical harm, either to the officer or to others. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

The Court's previous order granting the defendants' motion to dismiss the excessive force claim against Officer Lezama held that Gonzales had not alleged enough facts to plead that a constitutional violation had occurred. Dkt. No. 40 at 6. The first amended complaint was not clear enough about the force used by Officer Lezama. *Id*. Gonzales alleged new facts in his opposition to the defendants' previous motion to dismiss, which the Court did not consider at that time. *Id*. at 3, n.2.

The SAC alleges new facts and the Court finds that Gonzales has now sufficiently alleged a violation of his Fourth Amendment rights. Specifically, the SAC now clarifies that Lezama struck Gonzales with the SUV head-on, slamming into Gonzales's bicycle and legs, throwing Gonzales completely off his bicycle. SAC ¶¶ 49, 50. The FAC did not explain the details of that strike, leaving the Court unsure whether or how the vehicle made contact with Gonzales. The Defendants agree that the reasonableness determination here

5

"turn[s] on the precise level of force used—i.e. whether Officer Lezama used his vehicle as an 'impact weapon' to run Plaintiff down rather than to cause only a minor collision." Motion at 3. The newly alleged facts are that Officer Lezama used his SUV as an impact weapon to run Gonzales down, rather than causing a "only a minor collision." *Id.* This use of the patrol SUV as a weapon constitutes at least intermediate and potentially deadly force. *See Saetrum v. Vogt*, 673 Fed. App'x 688, 690 (9th Cir. 2016) ("cases from this and other circuits clearly establish that using a car as an impact weapon constituted at least a significant, intermediate level of force"); *United States v. Aceves-Rosales*, 932 F.2d 1155, 1157 (9th Cir. 1987), cert. denied, 484 U.S. 1077 (1988) ("it is undisputed that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon"); *see also Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1996) ("an attempt to hit an individual with a moving squad car is an attempt to apprehend by use of deadly force"). Being hit head-on by a speeding SUV could, of course, easily kill a bicyclist.

  The Court now applies the *Graham* factors to the facts alleged in the SAC. The new details provided in the SAC paint a picture of Officer Lezama not apparently suspecting Gonzales of any particular crime or offense[1] and responding with potentially deadly force, even though Gonzales posed no immediate threat to the Officer or to any other person.[2] These first three *Graham* factors all tend to suggest that Lezama behaved unreasonably. The most important factor—Gonzales's threat to Lezama or others—most strongly suggests that Lezama's use of deadly force was unreasonable. Gonzales, under the facts alleged in the SAC, posed a danger to absolutely no one. He was biking in a designated bike lane and on the sidewalk, late at night, to buy some Gatorade. Even when he turned away from Lezama to bike in the opposite direction, Gonzales posed no danger

---

[1] The plaintiff's opposition brief says that Lezama suspected Gonzales of "committing a vehicle code infraction"—specifically, of "not having the requisite red and white reflectors on his bicycle." Opp. at 4, 9. This fact is not alleged in the SAC so the Court does not consider it here.

[2] Defendants state in their reply brief that "Plaintiff's headlong flight on a bicycle through City sidewalks did, however, present a threat to the general public." Neither the allegations of the SAC nor common sense support this notion.

to Lezama or to the public, let alone a "significant threat of death or serious physical harm." *Garner*, 471 U.S. at 3. The only factor in Lezama's favor is that Gonzales refused to pull over and was thereby possibly evading arrest. But the Court finds that the circumstances overall, as alleged in the SAC, do not support the level of force that Lezama used. Lezama had only minimal justification to use any force against Gonzales at all and yet used deadly force against him. The SAC thus sufficiently pleads a constitutional violation.

### 1. Qualified Immunity

The "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis is two-pronged, querying: (1) whether there was a deprivation of a constitutional or statutory right, and (2) whether that constitutional or statutory right was "clearly established" at the time of the incident. *See Pearson*, 555 U.S. at 232.

The Court found above that the SAC plausibly alleges a violation of Gonzales's Fourth Amendment right to be free from excessive force. Next, the Court asks whether that right was clearly established at the time of the incident. The Court uses Plaintiff's version of the facts for this analysis at the motion to dismiss stage. In its order on the previous motion to dismiss, the Court found that "[w]hile it is common sense that a patrol vehicle is capable of producing excessive force and inflicting injuries to a bicyclist, it is unclear to the Court whether that happened in this case." Dkt. No. 40 at 8 (internal quotations omitted). The Court required more facts from the plaintiff to apply to the qualified immunity analysis, which it now has in the SAC. Under Plaintiff's new facts, a young man riding his bike at night—who committed no apparent offense and posed no apparent danger to anyone around him—was hit head-on by a speeding police SUV, knocked off his bike, and injured, all because he failed to pull over when asked to despite

7

having had difficulty hearing the officers' instructions through his headphones.

Defendants argue that no cases existed at the time of this incident "finding excessive force based on an officer causing a collision with a fleeing bicyclist that is so minor that it results in nothing more than the bicyclist hitting the hood before rebounding and standing unassisted" to have put Officer Lezama on notice as to the constitutionality of his actions. Motion at 7–8. This description of the incident is Defendants', not Plaintiff's. Basing the qualified immunity analysis on the defendants' version of events is not proper at the motion to dismiss stage. *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (at the motion to dismiss stage, "dismissal is not appropriate unless we can determine, *based on the complaint itself*, that qualified immunity applies") (emphasis added). The Court must take the facts in the light most favorable to the plaintiff. *Krainski v. Nevada ex. rel. Bd of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 968 (9th Cir. 2010). Plaintiff's facts describe a harmless bicyclist being intentionally struck head-on by a speeding SUV for no reason except that he did not pull over when instructed, causing multiple injuries including a concussion. In legal terms: deadly force was applied in the absence of any threat of any harm to anyone.

The parties argue over the applicability of *Saetrum v. Vogt*, 673 Fed. App'x 688, 690 (9th Cir. 2016) to this case. *Saetrum* is an unpublished order and therefore does not establish law for qualified immunity purposes. *Hines v. Youseff*, 914 F.3d 1218, 1230 (9th Cir. 2019). In *Saetrum*, an officer in a patrol car accelerated, turned toward, and hit the plaintiff, and then executed a hands-on takedown causing a concussion. *Saetrum*, 673 Fed. App'x at 690. Those facts closely mirror Gonzales's allegations here. The Ninth Circuit there wrote that "[a]ny reasonable officer would have understood using the patrol car as an impact weapon was unconstitutional under the circumstances," collecting cases from this Circuit and others establishing that use of an automobile as an impact weapon constitutes at least intermediate and up to deadly force. *Id*. The Court went on to write that "[o]ur precedent further established that intermediate force required more than a 'minimal' justification." *Id*. The Court finds here that while the written disposition in *Saetrum* did

8

not itself create precedent for qualified immunity purposes, its findings—that using an automobile to strike a suspect constitutes intermediate to deadly force, and that such force requires more than a minimal justification—were clearly established at the time of the incident here. The Court also finds that, as in *Saetrum*, any reasonable officer would have understood that the force used here was unconstitutional under the circumstances as alleged in the SAC.

It was clearly established at the time of the incident that vehicles can be used as deadly weapons and that striking someone with a vehicle could inflict deadly force. *See Brosseau v. Haugen*, 543 U.S. 194, 200 (2004); *U.S. v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987), cert. denied, 484 U.S. 1077 (1988) ("it is undisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon"); *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1146 n.9 (9th Cir. 1996) (abrogated on other grounds as recognized in *Monzon v. City of Murrieta*, 966 F.3d 946, 958 (9th Cir. 2020)) ("[t]here is no question that an automobile *can* inflict deadly force") (emphasis in original); *Jacquez v. City of San Jose, et al.*, Case No. 16-cv-05330-NC, 2018 WL 3730324, at *8–9 (finding that an officer using his patrol vehicle to strike a suspect fleeing on foot constituted deadly force).; *see also Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1996) ("an attempt to hit an individual with a moving squad car is an attempt to apprehend by use of deadly force"); *Donovan v. City of Milwaukee*, 17 F.3d 944, 949–50 (7th Cir. 1994) (calling a patrol vehicle striking a motorcycle "an application of deadly force"). In *Scott v. Harris*, the U.S. Supreme Court held that an officer had used deadly force when he rammed into a suspect's vehicle with his patrol car to stop a high-speed chase. 550 U.S. 372, 382 (2007). It is obvious that the potential force of a patrol car is greater when it strikes a person on a bicycle rather than a person in another vehicle.

It was also clearly established at the time of the incident that if an officer has "probable cause to believe that [a suspect] has committed a crime involving the infliction or threatened the infliction of serious physical harm, deadly force may be used if necessary to prevent escape and if, where feasible, some warning has been given." *Garner*, 471 U.S.

9

at 11–12. As to suspects who are evading arrest, it was specifically clearly established at the time that "[a]n officer may use deadly force to apprehend a fleeing suspect only if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," such as if the suspect threatens the officer or others with a weapon. *Id*. Here, according to the SAC, Lezama had no probable cause to believe that Gonzales had committed any crime, let alone a crime involving threats or infliction of serious harm to anyone. Additionally, Lezama gave no warning before striking Gonzales with the SUV. *See Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997) ("[W]henever practicable, a warning must be given before deadly force is employed."). Moreover, Lezama lacked probable cause to believe that Gonzales would cause serious harm to himself or anyone else; Gonzales was not suspected of having done so in the past, had no weapon, and gave no indication in the moment that he would hurt anyone. *Id*.

As the Court discussed in its previous order on the defendants' motion to dismiss the FAC, neither side here has presented a case involving a patrol vehicle intentionally striking a fleeing bicyclist. Dkt. No. 40 at 8. Cases where patrol vehicles strike other vehicles or pedestrians, or where officers take down bicyclists using their bodies, each present quite different pictures of force than that allegedly applied here. *Id*. But "[a]n officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury." *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), as amended (May 31, 1994). And "officials can still be on notice that their conduct violates established law even in novel factual circumstances," especially in Fourth Amendment cases "where the constitutional standard—reasonableness—is always a fact-specific inquiry." *Hope v. Pelzer*, 536, U.S. 730, 741 (2002); *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011). Here, the SAC's allegations are that Gonzales posed no threat to anyone at all and yet Officer Lezama used deadly force to apprehend him. A reasonable officer in Lezama's position would have known at the time that such action was unconstitutional. As such, Officer Lezama is not entitled to qualified immunity at this stage of the case.

### B. *Monell* Liability

The Court previously found that Gonzales had failed to plead sufficient facts to allege that the City of San Jose was liable under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978). Dkt. No. 40 at 10. The Court described the allegations of the FAC as "conclusory legal statements rather than specific facts." *Id*. In the SAC, Gonzales has not amended the allegations in support of his *Monell* claim. Without any additional facts alleged, the Court comes to the same conclusion as before: the *Monell* claim is not sufficiently pleaded and it is clear that further amendment would be futile.

### IV. Conclusion

The Court FINDS that Gonzales has successfully cured the insufficiencies with his previous pleading as to his claim for excessive force against Officer Lezama, but not as to his claim for *Monell* liability against the City of San Jose. The Court further finds that Officer Lezama is not entitled to qualified immunity at this stage of the case, under Gonzales's alleged facts. As such, the motion to dismiss the excessive force claim against Lezama is hereby DENIED and the motion to dismiss the excessive force claim against the City of San Jose is hereby GRANTED. That claim is DISMISSED and the City is hereby DISMISSED from this case. Lezama must answer the remaining claim within 14 days.

**IT IS SO ORDERED.**

Dated: September 9, 2020  _____
NATHANAEL M. COUSINS
United States Magistrate Judge